### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

ANTHONY COHEN        *

Plaintiff        *

v        *        Civil Action No.WMN-14-1850

WEXFORD HEALTH SOURCE, INC., et al.    *

       *

Defendants

       *

       ***

### MEMORANDUM

Pending is a Motion to Dismiss filed on behalf of Defendants Wexford Health Sources, Inc., Colin Ottey, M.D., James Hunt, Katie Winner, and Kristi Cortez (collectively "Medical Defendants").[1] ECF No. 33. Plaintiff Anthony Cohen ("Cohen") opposes the motion. ECF No. 37. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014).

### Background

The Complaint concerns Cohen's claim he was assaulted by correctional staff on March 7, 2014, and suffered injuries. Cohen asserts he was told he would be receiving a new cell mate and approximately three minutes later, after he had started to clean up his cell, three officers "attacked" him, beating him in the head, face, and neck.[2] He further claims he was choked to unconsciousness, awaking on the floor of his cell, whereupon he was kicked in the head. Cohen claims one of the officers kicked his face and head into the steel toilet, causing him to feel dazed. He was then escorted to a "cage" in the property storage area and told to strip for a search.

---

[1] An Amended Complaint names additional Defendants who are correctional officers. ECF No. 35. A response to the claims asserted against those Defendants is currently due on March 9, 2015.

[2] Facts regarding the use of force against Plaintiff will be further detailed upon receipt of Correctional Defendants' response to the Complaint.

Cohen claims he could not comply with the directive because he was still very dazed and he could not move his arms or fingers.  Because he did not comply, Cohen claims Sgt. Gordon choked him to unconsciousness.  When Cohen awoke he claims he was being held up by Gordon, who told Officer Crites to remove Cohen's socks, which were the only clothing other than his boxer shorts that Cohen was wearing.  Cohen claims he was then taken to the medical department.  ECF No. 1 at 3 – 4.

Cohen states he was examined by Registered Nurse James Hunt, who told Lt. McAlpine there was nothing he could do for Cohen.  Cohen claims Hunt asked him if he could breathe and Cohen was unable to respond to the question.  Two days later, on March 9, 2014, Cohen saw Kelly Fincham, LPN, and informed her that he could not stand up without becoming dizzy, losing balance, and falling down.  Cohen also complained of severe headaches, losing focus in his right eye, and numbness and pain in his right arm and fingers. Id. at 5.

On March 12, 2014, Cohen was seen by Kristi Cortez, RN, who determined Cohen had a fever, high blood pressure, and a mild concussion.  Cohen claims he was not seen again until eleven days later when he was examined by Dr. Colin Ottey.  Cohen told Ottey about the symptoms he reported to Cortez.  Cohen alleges that, in response to his complaints, Ottey "stated a lot of things but nothing was done."  As a result, Cohen claims he continued to file sick call slips. Id.

On April 2, 2014, Cohen was seen by PA Katie Winner and again explained his symptoms, adding that the right side of his face was numb and felt rubbery. Cohen claims that, again, a lot was said, but nothing was done.  He also states that at every encounter with medical staff he requested x-rays of his head, right arm, and fingers.  Id. at 6.

On May 13, 2014, Cohen states he was seen by Janette Clark, NP, who told him correctional staff informed medical staff that Cohen had refused medical treatment and x-rays on multiple occasions.  Cohen told Clark that he had never refused any medical treatment and stated it was his belief prison staff was attempting to cover up "the assault and battery crime" that had been committed against him.  Clark allegedly informed Cohen that if the officers again reported that he refused an x-ray, she would send a member of medical staff to confirm his refusal.  The following day Cohen received an x-ray.  Id. at 6.

Cohen was seen again by Clark on May 23, 2014, and the results of his x-ray were discussed.  Cohen states his skull is fractured without displacement.  He claims "many things was said" but his question as to what the treatment is required for the fracture was not answered.  Cohen states he has continued to send in sick call slips, but has not yet received treatment for his injury because "the medical staff are in a conspiratorial relationship with this administration as to act as if nothing has happen[ed] or is wrong" with him. Id. at 7.

Cohen asserts he should not have been allowed to leave the medical department in the condition he was in on the date of the alleged assault.  He claims it should have been clear to "any medical personnel" who saw him that the trauma he suffered was not ordinary as he could not even sit-up without assistance.  Despite his condition, Cohen states Hunt allowed security staff to place him in an isolation cell and made no effort to follow up on his condition later that day.  Id.

Cohen filed a Motion for Preliminary Injunctive Relief which was opposed by Medical Defendants.  ECF Nos. 18 and 26.  The motion was denied by this Court on evidence submitted by Medical Defendants concerning the course of his medical treatment.  Specifically, the following was noted:

> Plaintiff suffers from hyperparathyroidism, a condition involving an overactive parathyroid gland resulting in an excess of parathyroid hormone in his bloodstream.  This condition can create bone pain, stomach pain and headaches.  ECF 26 at Ex. A.  At the time Wexford filed the opposition response, Plaintiff was being scheduled for surgical intervention for his hyperparathyroidism.  *Id*., *see also* Ex. B.  In addition, Plaintiff is being scheduled for a CT scan of his head because an x-ray showed a mild fracture to his skull without separation or displacement.  *Id.* at Ex. A.  Wexford does not address the allegation that Plaintiff has been removed from all pain medication, but records filed with the opposition show an active prescription for Excedrin Migraine.  *Id.* at Ex. B, p. 13 and Ex. C, p. 16.  In addition, Dr. Ava Joubert, a physician employed by Wexford,  states that the symptoms Plaintiff attributes to the use of force incident occurring on March 7, 2014, are possibly attributable to hyperparathyroidism.  *Id.* at Ex. A.

ECF 55 No. at 3 (Order denying injunctive relief).

Medical Defendants assert that the Complaint fails to state an Eighth Amendment claim relying in part on the evidence submitted in opposition to Cohen's Motion for Preliminary Injunction.  ECF No. 33.  Additionally, they state that Cohen is being scheduled for surgical intervention of his condition via parathyroidectomy.[3]  Cohen is also scheduled to receive a CT scan of his head to follow up on the x-ray finding that he had a mild skull fracture.  Defendants further state that Cohen has and will receive all necessary tests and evaluations.  *Id.*

In his Opposition Response, Cohen asserts his need for medical attention was obvious and Defendants exhibited a callous disregard for his serious needs when Hunt refused to initially treat him after the assault and other medical staff continued to refuse to address his injuries in the months following.  ECF No. 37 at 5. Cohen points out that at the time he was seen by Hunt his face was swollen, he was being held up by the officer at all times, and could not even speak.  *Id.* at 9 – 10.   He further maintains that he has only received treatment for hyperparathyroidism, but not for the injuries sustained after the incident on March 7, 2014.  *Id*. at 6.  Cohen states that,

---

[3] Parathyroidectomy is surgery to remove parathyroid glands or parathyroid tumors. The parathyroid glands are right behind the thyroid gland in the neck. These glands help the body control calcium levels in the blood.  http://www.nlm.nih.gov/medlineplus

although Defendants rely heavily on the declaration by Dr. Joubert, he was not seen by Dr. Joubert until June 13, 2014, over three months after the use of force incident.  *Id*. at 7.  It was not until that date, according to Cohen, that he received CT scans of his head to determine the extent of his injuries.  He further states he has not been provided with the results of those tests.  Cohen claims he "lives in [a] constant state of pain" and still suffers from severe headaches, right eye pain, and numbness and pain to his right arm and fingers.  *Id*. at 8.

Cohen disputes the assertion that he refused a trip to have an x-ray done on March 14, 2014, and alleges he was kept in a cell without clothes at North Branch Correctional Institution (NBCI).  When officers arrived at his cell to transport him to Western Correctional Institution (WCI) he was wearing only underwear.[4]  Cohen states, "[i]f staff or medical wanted [him] to go to WCI . . . they would have given [him] some clothes."  *Id.* at 10.

Cohen admits to receiving "some medication" after June 13, 2014, for severe headaches and the other pain he experienced in his eye, right arm, and fingers, but it was provided in response to his hunger strike.[5]  A medical record submitted by Cohen notes that his hunger strike sparked a condition known as hypercalcemia,[6] requiring the administration of IV fluids.  ECF No. 37-1 at 26.  Cohen was advised by nursing staff that Dr. Joubert believed the "increased bone pain may be caused by the hypercalcemia" and that the IV fluids would help flush the

---

[4]  *See* ECF No. 37-1 at p. 8 (Notation: "no clothing refused x-ray").
[5]  *See* ECF No. 37-1 at p. 25 (Medical record dated June 13, 2014, indicating Cohen was on a hunger strike "and sustained right zygomatic arch fracture" in an altercation occurring in March. Also noting Cohen "states he's been in continual pain.").
[6]  Hypercalcemia is a condition in which the calcium level in your blood is above normal. Too much calcium in the blood can weaken bones, create kidney stones, and interfere with the way the heart and brain works.  Hypercalcemia most commonly results from overactive parathyroid glands.  One of the possible symptoms of hypercalcemia is bone pain. http://www.mayoclinic.org.  In addition to hyperparathyroidism, dehydration is also as a cause of hypercalcemia. *Id*.

calcium out of his system.  *Id*.  Cohen's calcium level was described as critical at 12.5 and he was prescribed 60 mg of Toradol for his headache.  *Id*.

Cohen further asserts that William Beeman, RN, would not respond to his questions about his head, but said he could only provide a padded helmet for Cohen.  ECF No. 37 at 11. Additionally, Cohen suggests that Beeman is indecisive about the nature of the five-minute encounter they had because he wrote three different reports about it.  *Id*. at 12.

Cohen alleges he was seen by Dr. Ottey approximately two weeks after he was injured, on March 23, 2014, and the only issue addressed was his dizziness.  *Id*.  Cohen claims the rest of what he said was ignored.  Cohen further asserts that Defendants Swan, Cortez, and Winner were all told of his serious medical symptoms, but none took action to treat his injuries.  *Id*. at 12 – 13. Cohen states that none of the symptoms he currently suffers were an issue prior to the assault that occurred on March 7, 2014, and Defendants' assertions that hyperparathyroidism is the root of the problem will not be supported by a review of his medical record.  ECF No.  37-1 at 1 – 2. As of the date of Cohen's Opposition Response, he had not received any medication for over a month.  *Id*. at 4.

Cohen filed another Motion for Preliminary Injunction on December 10, 2014, alleging that correctional staff are interfering with the medical care he is being provided.[7]  Cohen appears to concede that he is currently receiving medical care, but it is made difficult by the conduct of correctional staff.  He maintains, however, that "[i]t took ten months for the Defendants to admit that [Cohen] actually [has] a serious injury."  ECF No. 52 at 3.  In his declaration under oath, Cohen states that November 6, 2014, was the first time his head injury was directly addressed by medical staff when he was informed of the course of treatment.  ECF No. 52-2 at 2.   He states

---

[7]   The merits of the claims asserted regarding correctional staff's actions will be addressed after they have responded to the Complaint and the Motion for Preliminary Injunction.

that on December 4, 2014, he was told that Dr. Muntaz, a lung and chest specialist he saw on October 8, 2014, for a scar on his lungs, had informed Dr. Ottey that Cohen did not need surgery for his fractured skull, but the level of pain he experiences should be monitored.  *Id*.

Cohen asserts that medical staff has advised him not to refuse medical passes and Cohen maintains he has never refused a pass.  Attached as an exhibit to his Motion for Preliminary Injunction is an administrative remedy procedure request ("ARP") detailing his version of events on one occasion when he asserts he was denied access to medical staff by a correctional officer. ECF No. 52-3 at 6 – 7.   Cohen claims that Officer J. Crites came to his cell on May 8, 2014, and asked if he was going to sick call, and referred to Cohen as a "bitch."  *Id*. at 6.  Cohen responded that he was not going anywhere with Crites and asserts in the ARP he was denied access to sick call because he did not want to "take a risk with a known hostile officer and be accused of any number of false charges."  *Id*. at 7.

### Standard of Review

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555.   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677 - 78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (stating that once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint')).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (stating that there is no expectation that prisoners will be provided with unqualified access to health care).    Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40.   "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 844).   If the requisite subjective knowledge is established, an official may avoid liability if he responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir.

2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (stating that the focus of the inquiry must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Cohen's claim is that he was injured during a use of force incident and that injury was not addressed by medical Defendants in a timely manner.  He asserts it took 11 months for medical Defendants to acknowledge the injury and begin to address it.  An excessive delay in treating an injury states a colorable Eighth Amendment claim.  Medical Defendants have focused their response on the treatment Cohen received for his hyperparathyroidism and rely on that treatment as a basis to refute Cohen's claims.  Reviewing the claim asserted with the required deference and liberally construing the self-represented pleadings, the Complaint survives scrutiny under Fed. R. Civ. Proc. 12(b)(6).  The Motion to Dismiss shall be denied in the Order which follows and the progress of the case shall be governed by the deadlines set forth in the Order.


February 3, 2015_____                    _____/s/_____
Date                                                William M. Nickerson
                                                    United States District Judge